PAUL S. MEYER, State Bar No. 51146
   pmeyer@meyerlawoc.com
PAUL S. MEYER, A PROFESSIONAL CORPORATION
695 Town Center Drive, Suite 875
Costa Mesa, California 92626
Telephone:  714.754.6500
Facsimile:   714.979.9047

JOEL LEVINE, State Bar No. 52565
   jlesquire@cox.net
JOEL LEVINE, A PROFESSIONAL CORPORATION
695 Town Center Drive, Suite 875
Costa Mesa, California 92626
Telephone:  714.662.4462
Facsimile:   714.979.9047

Attorneys for Defendant
GILBERT N. MICHAELS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION – SANTA ANA

| UNITED STATES OF AMERICA, | CASE NO. 8:16-CR-00076-1-JVS |
|---|---|
| Plaintiff, | **DEFENDANT MICHAELS' PROFFER OF EVIDENCE TO BE ESTABLISHED AT AN EVIDENTIARY HEARING ON THE *GIGLIO* NEW TRIAL MOTION** |
| v. | |
| GILBERT N. MICHAELS, et al., | |
| Defendants. | **Hearing:**<br>Date:<br>Time:<br>Place:   Santa Ana, Courtroom 10C<br>Judge:   Hon. James V. Selna |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................ 1

II. WITNESSES AND ANTICIPATED TESTIMONY .......................................... 1

    A. Huntington Beach Police Department Detective Kevin Kesler ................ 1

    B. United States Secret Service Special Agent Jason Warren ...................... 7

    C. Siloam Springs, Arkansas Police Detective Tiffany Adams .................... 9

    D. Pretrial Services Officer Adrian Corona-Buergo ................................. 12

    E. United States Secret Service Special Agent Samuel Becan .................... 15

    F. Advanced Distribution Systems Employees ........................................ 17

III. CONCLUSION ....................................................................................... 18

# TABLE OF AUTHORITIES

<u>Page(s)</u>

**Cases**

*Brady v. Maryland,*
  373 U.S. 83 (1963)................................................................................................1

*Giglio v. United States,*
  405 U.S. 150 (1972)..............................................................................................1

*Napue v. Illinois,*
  360 U.S. 264 (1959)..............................................................................................1

# I.    INTRODUCTION

A hearing on post-trial motions for acquittal or for a new trial is currently scheduled for October 21, 2020.  The defendants have requested an evidentiary hearing on the *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and *Napue v. Illinois*, 360 U.S. 264 (1959), components of the motion.  The Court has not yet indicated whether the hearing on October 21, would be solely for oral argument on the motions, whether the defendants should be prepared to call witnesses on that date if an evidentiary hearing is ordered, or if the Court would schedule an evidentiary hearing on a subsequent date if it determines that one is warranted in this matter.

In order to assist the Court in determining if an evidentiary hearing is warranted, defendant Michaels respectfully submits this proffer describing the witnesses he would call, and the testimony he would expect to elicit, at an evidentiary hearing relating to the *Giglio* and *Napue* components of the motions.   Those witnesses and anticipated testimony are set forth below.

## II.    WITNESSES AND ANTICIPATED TESTIMONY

### A.    Huntington Beach Police Department Detective Kevin Kesler

Huntington Beach Police Department ("HBPD") Detective Kevin Kesler is one of the case agents in the case, and has been involved in the investigation of Gil Michaels, Stephen Paine, and other defendants since at least 2013.  Ex. C (HBPD Inv. Rep. of Aug. 29, 2013).  He investigated Paine and participated in pretrial debriefs of Paine.  In 2020, he also interviewed Paine and ran the searches in the FTC Consumer Sentinel Database database that uncovered multiple consumer pretrial and post-trial complaints against Paine's company.  CR 1144, Ex A. (FTC Consumer Sentinel Complaints); CR 1144, Ex. L (Mem. of June 17, 2020 S. Paine Telephone Interview).

1.    In connection with his duties as a case agent in this case and his experience as a criminal investigator, Detective Kesler understands the obligation to search for, and provide, *Giglio* information to the defense for Government trial witnesses.

2. Paine pleaded guilty in this case on November 15, 2017.  CR 446. Detective Kesler knew that Paine had pleaded guilty to fraud in the sale of toner to consumers over the phone, and specifically to misrepresenting the identity or role of the company during the initial call to the consumer and to using a "price increase" pitch with the consumer.  As part of his plea agreement, Paine agreed to fully cooperate with the Government, including attending meetings with the Government, answering all questions truthfully, and providing documents upon request.  CR 446 at 2-3.  Detective Kesler participated in at least one session with Paine and prosecutors, debriefing him and preparing him for testimony.  *See* Ex. D (Mem. of Aug. 14, 2017 Interview).

3. Detective Kesler made extensive use of the FTC Consumer Sentinel database, and other similar databases, in investigating the defendants in this case.  *See* Ex. C (HBPD Inv. Rep. of Aug. 29, 2013) at 28 ("On 8-21-13, as part of an ongoing investigation, I used law enforcement resources to located consumer complaints against IDC Servco and its affiliated sales companies.").

4. Detective Kesler knew that the prosecution planned to call Paine as a witness at trial, and that Paine would likely testify about his current and past involvement in selling toner to customers over the phone.  He participated in meetings with Paine and the prosecutors in connection with preparations for Paine's trial testimony.  *See* Ex. D (Mem. of Aug. 14, 2017 Interview).

5. Detective Kesler has been a lead investigator in this case since at least 2013, and is familiar with the fact that some persons in the telemarketing industry relating to toner sales frequently use multiple different company names to conduct business.  *See* Ex. E (HBPD Supp. Rep. of Oct 1, 2014) at 52.  Given Paine's background and guilty plea, Detective Kesler had reason to doubt Paine's veracity and credibility.  Detective Kesler was familiar, from information previously gathered in this case, that Paine had used multiple different company names when engaging in toner sales to consumers, including Case Distribution Services, Modern Distribution Systems, Century Imaging Systems, Premium Distributing Center, Standard Imaging Systems, Premium Marketing

Services, and Modern Imaging Solutions.  Ex. D (Mem. of Aug. 14, 2017 Interview) at 46; Ex. E (HBPD Supp. Rep. of Oct. 1, 2014) at 52; Ex. F (HBPD Incident Rep. of July 2, 2016) at 55.

6.     Detective Kesler was aware of his *Giglio* obligation, Paine's veracity issues, Paine's historical use of multiple company names, and the general nature of Paine's anticipated trial testimony.  Nevertheless, Detective Kesler did not, and was not asked to, conduct a pretrial inquiry into Paine's current employment or the company names Paine was currently using, nor to check with Paine's Pretrial Services Officer regarding Paine's current employment or the names of the companies with which Paine was currently involved.  Had Detective Kesler made such an inquiry, and learned the names of the companies that Paine was currently involved with, Detective Kesler would have conducted searches in the FTC Consumer Sentinel and Better Business Bureau databases.  These searches would have uncovered numerous consumer complaints against Paine's current company, National Distribution Systems, relating to deception and the use of a price increase pitch in the sale of toner to consumers over the phone. *See* CR 1152, Ex. B (BBB Complaints against Nat'l Dist. Svcs.).

7.     Detective Keslar also did not review the California Secretary of State website or any other public record databases for other companies associated with Paine. Had he done so, he would have discovered that Paine had registered Integrated Imaging Systems, Inc., doing business as Advanced Distribution Services, with the California Secretary of State on February 23, 2018.  CR 1144, Ex. G (Corp. Reg. Info.) at 90.  He would have also discovered the complaints described in paragraph 13, *infra*, which were not located until many months after the trial.   Detective Kesler would also have discovered that Paine had registered Minimotu, LLC, with the Oregon Secretary of State on May 20, 2010, and was making annual payments to maintain the registration.  Ex. A (Or. Corp. Reg. Info.) at 20-21.  He would have discovered that Minimotu, LLC, owns a 1996 Sea Ray power boat, which is docked in Marina Del Ray, California.  Ex. B

3

(Yacht Reg. Info.) at 23.  Further investigation would have likely revealed that Paine resided on this yacht, and was lying to Pretrial Services regarding his residence address.

8.   Detective Kesler was present at trial on November 6, 2019, when Paine testified as a witness for the prosecution that he was no longer involved in selling toner through cold calling or identity misrepresentations and was no longer using the price increase pitch, that he was not promised anything in exchange for his testimony, and that the Government was aware that he was selling toner over the phone, and that his involvement in toner sales had been "approved" by Pretrial Services.  Although Kesler suspected or should have suspected Paine of perjury, after Paine's testimony at trial about his current employment selling toner to consumers over the phone, Detective Kesler did not, and again was not directed to, conduct any inquiry into Paine's current employment, to look into whether there were complaints against the companies Paine was involved with, or to verify Paine's statements with Pretrial Services.  The trial continued until December 13, 2019.

9.   After Detective Kesler became aware of the Arkansas investigation of Paine and his business Advanced Distribution Systems ("ADS") in April or May 2020, and before defense counsel or the Court was informed of the Arkansas fraud investigation into Paine, Detective Kesler and federal agents communicated with the AUSAs in this case, with Paine's defense attorney, and with Siloam Springs, Arkansas Police Detective Tiffany Adams, and arranged to have the Arkansas investigation closed in return for the repayment by Paine's attorney of the funds lost by the Arkansas victim consumer.  CR 1144, Ex. K (June 8, 2020 E-mail from G. Staples) at 1; CR 1144, Ex. E (Mem. of Det. Adams July 30, 2020 Interview) at 2; CR 1144, Ex. D (Mem. of Det. Adams July 10, 2020 Interview) at 2.

10.   By early June 2020, Paine had informed the prosecution team, through counsel, that "the [Arkansas] sale was made by an employee without his knowledge and had been fired [sic]."  CR1144, Ex. K (June 8, 2020 E-mail from G. Staples) at 136. Detective Keslar failed to investigate Paine's claim.  Had he done so, he would have

discovered that ADS had made multiple sales to the Community Physicians Group ("CPG") in Siloam Springs, Arkansas, between November 29, 2018 and March 20, 2019.  CR 1144, Ex. L (Mem. of June 17, 2020 S. Paine Interview) at 167.

11.    In early June 2020, after the prosecution helped arrange for the closure of the Arkansas investigation, but before cooperating witness Paine was interviewed by the case agents, the prosecution team contacted Pretrial Services regarding Paine.  CR 1152, Ex. D (Pretrial Services Violation Rep.) at 90. On June 15, after the closure of the Arkansas investigation but before Paine was interviewed, Pretrial Services initiated a Pretrial Violation Report in which it recommended that the Court take no action.  *Id.* at 2.

12.    On June 17, 2020, Detective Kesler participated in a teleconference with Paine, Paine's attorney, and AUSAs Staples, Marrett, and Lichtman.  CR 1144, Ex. L (Mem. of June 17, 2020 S. Paine Interview).  In that teleconference, Paine claimed that he had informed Pretrial Services that he was selling toner over the phone to consumers. *Id.* at 161.  He also claimed that he closed Advanced Distribution Systems in about January of 2020.  *Id.*  Paine also claimed that ADS did not use a "price increase" pitch and did not state or infer that it was the consumer's regular toner supplier.  *Id.*  Paine said that ADS went out of their way to identify the company to the consumer.  *Id.* at 161-62.  He also said that his company rarely received complaints.  *Id.* at 162.

13.    Also on June 17, 2020, Det. Kesler conducted a review of the FTC Consumer Sentinel Database for ADS, and located 13 complaints against Paine's company.  CR 1144, Ex A. (FTC Consumer Sentinel Complaints) at 27.   Those complaints span a time period from February 2019, many months before trial, through the spring of 2020, after trial and after Paine supposedly closed his company in January 2020 (as stated in his June interview with the prosecution team). *Id.* at 29-54.  The FTC Consumer Sentinel Complaints establish that, despite Paine's trial testimony that ADS did not mislead consumers or use a "price increase" pitch with consumers, ADS in fact affirmatively misled consumers by misidentifying itself and by stating or inferring that

5

it was the consumer's regular toner supplier, and ADS regularly used the "price increase" pitch with consumers. Better Business Bureau complaints against ADS for that time period make similar allegations. CR 1144, Ex. B (BBB Complaints).

14. Although Pretrial Services records show that Paine also listed "National Distribution Systems" as an employer, Detective Kesler did not conduct any FTC Consumer Sentinel Database or other checks on that entity. Had he done so, he would have uncovered multiple consumer complaints against National Distribution Services. *See* CR 1152, Ex. B (BBB Complaints against Nat'l Dist. Svcs.).

15. The Court signed off on the Pretrial Services Violation Report recommending no action against Paine on June 16, 2020. CR 1152, Ex. D (Pretrial Services Violation Rep.) at 91. This was only a week after defense counsel were informed of the Arkansas investigation of Paine, and before the Court was informed of the numerous FTC Consumer Sentinel Database complaints against Paine and his company.

16. If Detective Kesler were called as a witness, he would also testify regarding the following matters, which are important unresolved factual issues:

- Whether he or any other case agent conducted, or were asked to conduct, any investigative update or inquiry for *Giglio* material relating to Paine prior to his trial testimony, and if not, why not.
- Whether, following Paine's testimony at trial, he or any other case agent participated in any discussion about whether to investigate any of Paine's statements during his testimony, and if not, why not.
- What role he and other members of the prosecution team had in arranging the payment by Paine's attorney to the Arkansas victim, and the closing of the Arkansas case before informing Paine's Probation Officer of the Arkansas criminal investigation into Paine's toner sales.

- Why the prosecution team deferred interviewing Paine until after the Arkansas case was closed and after the Probation Officer submitted a violation notice recommending that no action be taken.

**B.    United States Secret Service Special Agent Jason Warren**

United States Secret Service ("USSS") Special Agent Jason Warren was the primary federal case agent in the case, and was involved in the investigation of defendants Gil Michaels, Stephen Paine, and other defendants between 2013 until he suddenly retired on the eve of trial in October 2019.

1.    In connection with his duties as a federal case agent, Agent Warren understands the obligation to search for, and provide, *Giglio* information to the defense for witnesses that testify for the Government at trial. In other cases, Warren has helped to collect *Giglio* information in preparation for a cooperating witness's testimony.

2.    Stephen Paine pleaded guilty in this case on November 15, 2017, CR 446, and Agent Warren knew that Paine had pleaded guilty to fraud in the sale of toner to consumers over the phone – specifically, to misrepresenting the identity or role of the company calling the consumer, and using a "price increase" pitch with the consumer. As part of his plea agreement, Paine agreed to fully cooperate with the Government, including attending meetings with the Government, answering all questions truthfully, and providing documents upon request. CR 446 at 2-3.

3.    Agent Warren knew that the prosecution planned to call Paine as a witness at trial, and that he would likely testify about his current and past involvement in selling toner to consumers over the phone. He participated in meetings with Paine and the prosecutors in connection with preparations for Paine's trial testimony.

4.    Given Paine's background and guilty plea, Agent Warren had reason to doubt Paine's veracity and credibility. Agent Warren was familiar, from information previously gathered in this case, that Paine had used multiple different company names when engaging in toner sales to consumers, including Case Distribution Services, Modern Distribution Systems, Century Imaging Systems, Premium Distributing Center,

Standard Imaging Systems, Premium Marketing Services, and Modern Imaging Solutions. Ex. D (Mem. of Aug. 14, 2017 Interview) at 46; Ex. E (HBPD Supp. Rep. of Oct. 1, 2014) at 52; Ex. F (HBPD Incident Rep. of July 2, 2016) at 55.

5.     Agent Warren understood that information establishing that Paine, while under federal supervision in this case and while testifying as a cooperating Government witness, was continuing to operate a toner telemarketing business not disclosed to the Government, that he was continuing to call consumers and to misrepresent the identity or role of his company, and that he was continuing to use a "price increase" pitch to induce consumers to purchase toner, would have severely undermined the credibility of Paine as a witness, and would also have undermined the Government's case.

6.     Agent Warren made extensive use of the FTC Consumer Sentinel database, the Better Business Bureau database, and other similar databases, in investigating the defendants in this case.

7.     Agent Warren was aware of his *Giglio* obligation, Paine's veracity issues, Paine's historical use of multiple company names, and the general nature of Paine's anticipated trial testimony.  Nevertheless, Agent Warren did not, and was not asked to, conduct a pretrial inquiry into Paine's current employment or the company names he was currently using, or check with Paine's Pretrial Services Officer about Paine's current employment or the names of the companies he was currently involved with.  Had Agent Warren done so, and learned the names of the companies that Paine was currently involved with, he would have conducted searches in the FTC Consumer Sentinel Database and the Better Business Bureau database, and he would have located the numerous consumer complaints against Paine's current company, National Distribution Systems, relating to deception and the use of a price increase pitch in the sale of toner to consumers over the phone.  *See* CR 1152, Ex. B (BBB Complaints against Nat'l Dist. Svcs.).

8.     Agent Warren also did not review the California Secretary of State website or any other public record databases for other companies associated with Paine.  Had he

8

done so, he would have discovered that Paine had registered Integrated Imaging Systems, Inc., doing business as Advanced Distribution Services, with the California Secretary of State on February 23, 2018. CR 1144, Ex. G (Corp. Reg. Info.) at 90. He would have also discovered the FTC Consumer Sentinel Database and Better Business Bureau complaints against ADS, which were not located until many months after the trial. *See* CR 1144, Ex A. (FTC Consumer Sentinel Complaints); CR 1144, Ex. B (BBB Complaints). Agent Warren would also have discovered that Paine had registered Minimotu, LLC, with the Oregon Secretary of State on May 20, 2010, and was making annual payments to maintain the registration. Ex. A (Or. Corp. Reg. Info.) at 20-21. He would have discovered that Minimotu, LLC, owns a 1996 Sea Ray power boat, which is docked in Marina Del Ray, California. Ex. B (Yacht Reg. Info.) at 23. Further investigation would have likely revealed that Paine resided on this yacht, and was lying to Pretrial Services regarding his residence address.

9.     If Agent Warren were called as a witness, he would also testify regarding the following matter, which is an important unresolved factual issue:

- Whether he or any other case agent conducted, or were asked to conduct, any investigative update or inquiry for *Giglio* material relating to Paine prior to his trial testimony, and if not, why not.

## C.     Siloam Springs, Arkansas Police Detective Tiffany Adams

Tiffany Adams is the Siloam Springs, Arkansas Police Department ("SSPD") Detective who investigated Government cooperating witness Stephen Paine and his company, ADS, for toner fraud as part of an investigation that began in April 2019. CR 1144, Ex. H (SSPD Record No. 20072814330) at 98. Detective Adams brought her investigation of Paine to the attention of Pretrial Services on December 10, 2019. CR 1144, Ex. F (SSPD Record No. 20072814320) at 85-86. She subsequently had discussions with USSS Special Agents and the U.S. Attorney's Office about the case, and about closing her investigation. *Id.* at 83; CR 1144, Ex. E (Mem. of Det. Adams July 30, 2020 Interview) at 80. Detective Adams concluded her investigation of Paine

in June 2020.  CR 1144, Ex. F (SSPD Record No. 20072814320) at 82; CR 1144, Ex. E (Mem. of Det. Adams July 30, 2020 Interview) at 80.

1.     The Siloam Springs Police Department opened a fraud investigation into ADS on April 18, 2019, based on a complaint from CPG at the Siloam Springs Medical Center regarding toner sales.  CR 1144, Ex. H (SSPD Record No. 20072814330) at 98. According to her investigation, ADS  told a CPG employee that "the price of toner was going up and identified themselves as working for PBS (the actual company used by the medical center)," and extracted $6,200.46 from CPG.  *Id*.  On November 26, 2019, Adams received bank account records pursuant to a subpoena which identified ADS and Stephen D. Paine as the target of her investigation.  CR 1144, Ex. C, (SSPD Record No. 20072814340) at 62 & 70.

2.     On December 10, 2019, Detective Adams received and reviewed a criminal history sheet for Paine that indicated that he was under the supervision of federal Pretrial Services Officer Adriana Corona-Buergo.  CR 1144, Ex. I (SSPD Record No. 20078214381) at 127-28.  At 1:40 p.m. CST that same day, Adams called and left a voicemail for Officer Corona-Buergo.  CR 1144, Ex. F (SSPD Record No. 20078214320) at 86.  At some point after 3:30 p.m. CST, but still on December 10, Adams spoke with Corona-Buergo and informed her of the facts she had learned about Stephen Paine and the nature of her investigation, and asked for assistance in interviewing Paine.  *Id*. at 85.  Adams' contemporaneous notes reflect that Corona-Buergo told Adams that she could not do the interview, and that Adams would have to ask local law enforcement to interview Paine on her behalf.  *Id*.  Corona-Buergo did not tell Adams why Paine was on federal supervision or that Paine was a defendant and trial witness in a jury trial involving toner fraud, and she did not refer Adams to AUSA Staples, the local USAO, or any federal law enforcement agency.  *Id*.

3.     On December 18, 2019, Adams contacted Corona-Buergo to request Stephen Paine's address, as the address she had was for a USPS store.  *Id*.  Corona-Buergo informed Adams that she could not provide any information to outside parties,

including law enforcement agencies. *Id.* On December 31, 2019, Adams contacted the L.A. County Sherriff's Department, and Detective Vic Paladino agreed to help locate Paine. *Id.*; Ex. G (SSPD Record No. 20072814370) at 59. On January 8, 2020, Paladino informed Adams that Paine's Malibu address was a vacant lot, his Malibu business address was a UPS store, and the Hollywood Boulevard business address was a commercial complex. Ex. G (SSPD Record No. 20072814370) at 58.

4.      On April 29, 2020, Adams forwarded the records of her investigation to U.S. Secret Service agent Samuel Becan. CR 1144, Ex. F (SSPD Record No. 20078214320) at 55. After she provided her reports to Becan, she started receiving inquiries back from other federal officials, through Agent Becan, asking about the case involving Paine. CR 1144, Ex. D (Mem. of July 10, 2020 Adams Interview) at 46. During these calls, Detective Adams was informed by the federal agents that ADS was part of a larger criminal network of telemarketers committing fraud through false sales pitches selling overpriced copier toner. *Id.* Detective Adams indicated during these conversations that she was ready to turn over her investigation to the local district attorney for a prosecution decision, but one of the federal officials told her that they would be taking over the case at the federal level and there was no need for her to file a case in state court. *Id.*

5.      Special Agent Becan informed Adams on May 20, 2020, that he understood from the federal prosecutors that Paine's attorney had offered to repay the Arkansas victim. CR 1144, Ex. F (SSPD Record No. 20078214320) at 55. Detective Adams consulted with the Arkansas victim that day. The next day, Paine's lawyer contacted Detective Adams and stated that he would negotiate directly with the victim, CPG, and that he expected the criminal investigation to be dropped if that occurred.

6.      On June 9, 2020, Paine's lawyer provided Detective Adams with a copy of a refund check to CPG, and asked that, "[p]ursuant to our discussion, can you please confirm that you will be closing out your investigation at this time without a referral for prosecution?" CR 1144, Ex. J (SSPD Record No. 20078214350) at 132-34. Adams'

report closing the case states that USSS Special Agent Becan had consulted with the AUSA in the case, who arranged for Paine to return funds to the Arkansas victim and that in exchange no local charges would be filed against Paine. CR 1144, Ex. H (SSPD Record No. 20072814330) at 98.

7.    On July 10, 2020, after the Arkansas investigation had been closed, Detective Adams received a request from AUSA Bradley E. Marrett, relayed through Special Agent Becan, for copies of documents relating to CPG's purchase of toner from ADS, and for copies of any communications with the prosecution team, including Special Agent Warren and Detective Kesler.

If Detective Adams were called as a witness, she would also testify regarding the following matters, which are important unresolved factual issues::

- Which Assistant U.S. Attorneys she spoke to about the investigation, when she spoke to them, and what they discussed.
- The nature of her discussions with Paine's lawyer, and with AUSAs and federal agents regarding the agreement not to refer Paine's case for local prosecution.
- Whether any federal agents or prosecutors contacted the victim in the Arkansas case regarding a refund, or declining to press charges.

**D.    Pretrial Services Officer Adrian Corona-Buergo**

Pretrial Services Officer Adriana Corona-Buergo oversaw Paine's pretrial release in this case and maintained the file on Paine, including his employment; spoke with Arkansas Detective Tiffany Adams about her fraud investigation of Paine on December 10, 2019; and filed a Pretrial Violation Notice after discussions with the AUSAs in this case several months later, in June 2020, recommending that no action be taken against Paine.  CR 1152, Ex. A (Pretrial Services Reps.) at 20 & 32-48; CR 1144, Ex. F (SSPD Record No. 20072814320) at 4-5; CR 1152, Ex. D (Pretrial Services Violation Rep.) at 1-2.

1.     Pretrial Services Officer Corona-Buergo was Paine's supervising officer during the relevant time period in this case. CR 1152, Ex. A (Pretrial Services Reps.) at 20 & 32-48. She was aware that Paine had pleaded guilty to fraud in connection with the sale of toner to consumers in a telemarketing operation and was a cooperating witness for the Government. She was also the supervising officer for defendant Gil Michaels and other defendants in this case, and was aware during October through mid-December that the jury trial in this case was underway and that Paine was a trial witness for the prosecution.

2.     The monthly Pretrial Services reports submitted by Paine did not disclose any association with ADS: Paine listed his employer solely as Case Distribution throughout 2018 and 2019, and after trial as National Distribution Systems. CR 1152, Ex. A (Pretrial Services Reps.) at 18-40. Paine did not provide an address or phone number for Case Distribution in any of these reports. *Id*. In every one of his monthly reports to Pretrial Services, over a period of three years, Paine falsely reported working zero hours while earning a flat $5,000, implying that he was not doing any work while he was on pretrial release. *Id*. at 10-56.

3.     Pretrial Services Officer Corona-Buergo did not confirm Paine's employment. Nor did she review the California Secretary of State website or any other public record databases for other companies associated with Paine. Had she done so, she would have discovered that Paine had registered Integrated Imaging Systems, Inc., doing business as Advanced Distribution Services, with the California Secretary of State on February 23, 2018. CR 1144, Ex. G (Corp. Reg. Info.) at 90. She would have also discovered that Paine had registered Minimotu, LLC, with the Oregon Secretary of State on May 20, 2010, and was making annual payments to maintain the registration. Ex. A (Or. Corp. Reg. Info.) at 20-21. She would have discovered that Minimotu, LLC, owns a 1996 Sea Ray power boat, which is docked in Marina Del Ray, California. Ex. B (Yacht Reg. Info.) at 23. Further investigation would have likely revealed that Paine resided on this yacht, and was lying to Pretrial Services regarding his residence address.

4.      Contrary to Paine's trial testimony on November 6, 2020, Pretrial Services Officer Corona-Buergo did not "approve" Paine's employment in selling toner to consumers over the phone; in fact she was not aware that Paine was doing so.

5.      On December 10, 2019, Pretrial Services Officer Corona-Buergo was aware that the Michaels trial was still not completed.  On that date, she received a voice mail and then had a telephone conversation with Siloam Springs, Arkansas Detective Tiffany Adams.  CR 1144, Ex. F (SSPD Record No. 20072814320) at 85-86.  Detective Adams explained to her that she was investigating Paine and his company, ADS, for fraud in connection with selling toner over the phone to consumers.  *Id.* at 85; CR 1144, Ex. E (Mem. of Det. Adams July 30, 2020 Interview) at 79.  Officer Corona-Buergo declined to provide Adams with any information as to Paine's location or to assist her in arranging an interview of Paine.  CR 1144, Ex. E (Mem. of Det. Adams July 30, 2020 Interview) at 79; CR 1144, Ex. F (SSPD Record No. 20072814320) at 85.  She did not inform the Court that defendant Paine was under criminal investigation for the same type of conduct that he had pleaded guilty to in the case in which he had just testified at trial.

6.      Pretrial Services Officer Corona-Buergo was contacted by AUSA Staples on June 9, 2020.  CR 1152, Ex. D (Pretrial Services Violation Rep.) at 90.  He advised her that he had become aware of the Arkansas investigation against Paine, that the matter had been resolved through an agreement in which Paine would pay back the victim, and no charges would be filed against Paine in Arkansas.  *Id.*

7.      Pretrial Services Officer Corona-Buergo submitted a Pretrial Services Violation Report dated June 15, 2020, which omits any mention of her December 10, 2019 conversation with Adams regarding the Arkansas investigation of Paine and ADS.  *See id.*  Pretrial Services Officer Corona-Buergo did not conduct any other investigation of Paine's activities in selling toner, or in reporting his employment to Pretrial, did not review Paine's trial testimony, and did not interview Paine before filing the Violation Report.  The Violation Report, in describing the violation conduct, states only that the lead AUSA in this case advised her of the Arkansas investigation on June 9, 2020, and

14

omits any reference to the call from Detective Adams six months earlier, during the trial, in which she directly received the same information. *Id*. at 90-91.

8.    The Court signed off on the Violation Report and recommendation on June 16, 2020, before Paine was interviewed by the prosecution team, and before defense counsel in this case were informed of the numerous FTC Consumer Sentinel Database complaints against ADS. *Id*. at 91.

9.    If Corona-Buergo were called as a witness, she would also testify regarding the following matters, which are important unresolved factual issues:

- Whether she informed the USAO or any agents associated with the prosecution team about Adams' December 10, 2019 call, and if so, when and how, and if not, why not.
- Any contact she had with the prosecution team regarding Paine prior to or during the trial.
- What, if anything, Paine told her about his employment while she was responsible for his probation.
- What steps, if any, she took to verify Paine's employment.
- Whether she investigated Paine's repeated claims that he made $5,000 while working zero hours.
- Whether she inquired as to why Paine did not provide an address or phone number for Case Distribution, and if not, why not.
- Whether the AUSAs requested that she file a violation notice with a recommendation to the Court that no action be taken against Paine.
- Whether she attempted to interview Paine or undertake any other investigation of Paine prior to filing her violation notice and no-action recommendation.

**E.    United States Secret Service Special Agent Samuel Becan**

Samuel Becan was the USSS Special agent whom Detective Adams contacted on April 29 2020. CR 1144, Ex. F (SSPD Record No. 20072814320) at 83. Adams recalled that, after she provided her reports to Becan, she started receiving calls about the case

15

involving Paine. CR 1144, Ex. D (Mem. of July 10, 2020 Adams Interview) at 77. Becan informed Adams on May 20, 2020, that he contacted a federal prosecutor who stated that Paine's lawyer had offered to repay the funds to the victim in Adams' case.  CR 1144, Ex. F (SSPD Record No. 20078214320) at 83.

1.     Special Agent Becan is an experienced federal investigator of fraud schemes.  Adams contacted him on April 29, 2020, regarding her investigation of Paine and ADS relating to fraud in the sale of toner to consumers. CR 1144, Ex. F (SSPD Record No. 20072814320) at 83. Special Agent Becan then spoke with the prosecution team in this case concerning the status of Paine, and the Arkansas investigation, and provided documents relating to the Arkansas investigation to the AUSAs in this case in early May, 2020.

2.     Special Agent Becan discussed with the prosecution team what could be done to resolve the Arkansas investigation against Paine.  Special Agent Becan, with the urging of the prosecution team, told Detective Adams that the federal investigation would handle the Arkansas matter as part of a larger federal prosecution.

3.     Special Agent Becan helped coordinate a resolution of the Arkansas matter involving Paine's attorney repaying the Arkansas victim, CR 1144, Ex. F (SSPD Record No. 20072814320) at 83, and encouraged Detective Adams not to refer her case to the district attorney in Arkansas for the filing of charges.

4.     On July 10, 2020, after the Arkansas investigation had been closed, Special Agent Becan related to Detective Adams a request from AUSA Bradley E. Marrett, for copies of documents relating to CPG's purchase of toner from ADS, and for copies of any communications with the prosecution team, including Agent Warren and Detective Kesler.

If Becan were called as a witness, he would also testify regarding the following matters, which are important unresolved factual issues:

- Which Assistant U.S. Attorneys he spoke to about the Arkansas investigation.

- Whether any federal agents or prosecutors contacted the victim in the Arkansas case regarding a refund, or declining to press charges.

- Whether he or any other federal agents or prosecutors urged Detective Adams not to refer her case to local authorities in Arkansas for prosecution.

## F.   Advanced Distribution Systems Employees

Tamara McDonald, "Rachel" aka Ruby Martin, and "Janice" are all employees of ADS whom Paine, in his June 17, 2020 interview with the prosecution team, identified as persons who made toner sales to consumers.  CR 1144, Ex. L (Mem. of June 17, 2020 S. Paine Interview) at 162.

1.   Stephen Paine owned and controlled ADS, a telemarketing operation that sold toner to consumers over the phone, and the company made sales from at least early 2019 through the spring of 2020.  CR 1144, Ex. G (Corp. Reg. Info.) at 90 & 94; CR 1144, Ex. A (FTC Consumer Sentinel Complaints) at 3-28; CR 1144, Ex. B (BBB Complaints) at 56-59.   Paine managed the sales activities of a handful of ADS employees.  CR 1144, Ex. L (Mem. of June 17, 2020 S. Paine Interview) at 161.

2.   Paine instructed them in sales techniques, using cold calls, deceiving consumers by implying that the caller was the consumer's usual toner supplier, and using a "price increase" pitch.  Paine did not work zero hours.  In fact, he was active in managing the business during most months in 2019 and 2020.  Consumers frequently complained about ADS' deceptive sales practices, and Paine was aware of those complaints.

3.   "Rachel" used an alias, "Ruby Martin" when calling customers.  CR 1144, Ex. L (Mem. of June 17, 2020 S. Paine Interview) at 162.  She made the sale to CPG that was the genesis of the Arkansas criminal investigation.  CR 1144, Ex. H (SSPD Record No. 20072814330) at 98.  Martin claimed that "a contract had been signed," but when Martin sent the contract, it "listed the name of no one who worked for the medical center."  *Id*. Martin told the consumer that "no refund would be given and the contract would be completed or the account would be sent to collections."  *Id*.

17

### III.   CONCLUSION

This Court should order an evidentiary hearing relating to the *Brady*/*Giglio* and *Napue* components of defendant Michaels Supplemental Memoranda in Support of the January 13, 2020 Motion for Judgment of Acquittal and Motion for New Trial.  CR 1144; CR 1152.  At any such hearing, defendant Michaels would call the witnesses and establish the testimony and facts described above.

Dated:  October 13, 2020

PAUL S. MEYER
PAUL S. MEYER,
A PROFESSIONAL CORPORATION

By:  */s/ Paul S. Meyer*
_____
                Paul S. Meyer

Dated:  October 13, 2020

JOEL LEVINE
JOEL LEVINE,
A PROFESSIONAL CORPORATION

By:  */s/ Joel Levine*
_____
                Joel Levine

Attorneys for Defendant
GILBERT N. MICHAELS